**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAHTAUB MOORE, an individual
1 Wood Road
Wilmington, DE 19806
    *Plaintiff,*

    v.

JONATHON MOORE
    134 Three Mile Harbor Road
    East Hampton, NY 11937
                                **Case No: 1:24-cv-01814**


LAW OFFICES OF JONATHON MOORE, PLLC
    5335 Wisconsin Avenue, NW Suite 101
    Washington, DC 20006

JULIE SANFORD
    30 Saint Roberts Drive
    Stafford, VA 22556-3650

OBERMAYER, REBMANN, MAXWELL, ET, AL.
    1500 Market Street, Suite 3400
    Philadelphia, PA 19102

LESLIE SPOLTORE
    13 Foxview Road
    Hockessin, DE 19707

HILLARY DAVIS
    78 Bridge Lane
    Bridgehampton, NY 11932
and
    2446 Main St
    Bridgehampton, NY 11932

HALLORAN, KITTILA, FARKAS, LLP
    1101 30th Street, NW, suite 500
    Washington, DC 20007
    Agent: Theodore Kittila

ECCLESTON & WOLF, PC
    7240 Parkway Drive, 4th Floor

RECEIVED

JUL 1 6 2024

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Hanover, MD 21076

MASROUR BARZANI
    802 Foothill Road
    Beverly Hills, CA 90210

JOHN DOES 1-10,

    *Defendants.*

**JURY TRIAL DEMANDED**

---

## AMENDED COMPLAINT

1.  This civil action is commenced to recover damages from the Defendants, jointly and severally, lacking objective legal reasonableness or untethered to any statute or law or authorization of legal rules clearly established at times of such unlawful acts, unlawfully conspired, confederated, constituted, and agreed together and with each other to commit offenses against the Plaintiff and against the United States, in ways made more definite below to violate certain laws, defraud insurance companies, unjust enrichment accusing Plaintiff of wrong doing, false representation and defamation, through a network of cleverly crafted transnational criminal organization, corruption scheme, and conspiracy of crimes, continuing to this day, to conceal an international criminal enterprise and conceal activities which in injuring Plaintiff and criminally degrades, desecrates, derides, and violates the "norm of international character accepted by the civilized world." *See Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108, 133 S. Ct. 1659, 185 L. Ed. 2d 671* (2013).

2.  Defendants as individuals and corporations engaged in and do engage in unlawful means, each of whom had conduct, knowledge, and intent, and each of whom is aware of the criminal enterprise's continual misconduct and has some participation in the operation and

furtherance of the enterprise itself, and with orchestrated intent to enrich themselves and further the object of the criminal enterprise, and used Plaintiff fraudulently as a front to continue the criminal conduct by placing her as an employee of a corporation used solely to avoid compliance with U.S. laws. Defendants, as well as others known and unknown, are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Moore Ingomar Continuing Criminal Enterprise.  ("MICCE"). The Moore Ingomar Continual Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of Defendants, including each of their employees, agents, contractors, servants, representatives, and counsel.

3.   The Moore Ingomar Continuing Criminal Enterprise falls within the meaning of 18 U.S.C. §1961(4) and consists of a group of "persons" associated together for the common purpose of:

(i)accumulating wealth for the Enterprise's leadership, through both legal and illegal means; (ii) concealing and refusing to report the criminal activity of its members; (iii) preventing its members' victims, including member victims, from reporting crimes to governmental authorities and/or cooperating with governmental authorities; (iv) preventing witnesses of its members' crimes from cooperating with governmental authorities; and (v) engaging in punitive harassment campaigns against perceived enemies, including victims and witnesses who cooperate with governmental authorities. To achieve their common goals, and to harm Plaintiff, Defendants hid and do hide the Enterprise's crimes from the public, from governmental authorities, and from Plaintiff, and prevented or attempted to prevent others, often maliciously including but not limited to Plaintiff, from approaching governmental authorities regarding Defendants' crimes and fraud, including tax avoidance, tax fraud, terrorist-funding, and defrauding Plaintiff by placing her as a fraudulent "employee" on corporations to be used for

tax corruption schemes, money-laundering, and maliciously has pursued quasi-criminal contempt charges over data and documents abandoned but are federal evidence of Defendants' corruption; all conspired to use Plaintiff, as recent as the filing of this pleading, to commit professional liability insurance fraud by accusing Plaintiff of theft, intimidating through means of defamation, death threats, and monetary fraud, and defrauding the United States Government and others; financial crimes; identify theft and access device fraud, mail fraud, wire fraud; laundering of monetary instruments; engaging in transactions with the proceeds of specified unlawful activity; acts involving perjury, false statements and declarations. comprehensive computer data theft and destruction; obstruction of justice; bribery and facilitation payments; deprivation of income and employment; willful concealment of tax data; tax fraud and tax perjury; immigration fraud and immigration perjury; and conspiracy to commit all above criminal acts; and did fraudulently and through material misrepresentations and fraud for personal enrichment and continue the MICCE by obtaining money by illicit means over money that was property of Plaintiff , the U. S. Government, and insurance companies. Defendants' acts were all carried out with mens rea (carried out acts that had substantial effects on the perpetration of a specific crime) and *actus reus*.

4.   At all times, Defendants, a force unrestrained by rules or laws, to further their own personal financial agenda, and believing themselves to be above the law, placed their own serial criminal and other illegitimate interests, financial enrichment, and firms above the national security interests of the United States, the safety of American lives and others in the Middle East, including Plaintiff, and the governmental interests of and political, economic, and security conditions conducive to a peaceful society.

5.   "By knowingly providing substantial assistance," (*See Atchley v. AstraZeneca UK*

*Ltd., 22 F.4th 204, 210 (D.C. Cir. 2022)*, Defendants' conduct knowingly supported Islamic State's violent global terrorist campaign and acts against Americans in Iraq, Afghanistan, and Syria.

Defendants' conduct and falsely placing Plaintiff as a "sham" employee of Ingomar Fiduciary Services, Inc. a shell company, using that company and subsidiaries to organize entities to fund illegal activity and tax avoidance, defaming and inflicting harm to the Plaintiff and the United States, as their activities knowingly translated directly into substantial numbers of terrorists, weapons, and bombs that the Islamic State and the Islamic Revolutionary Guard Corps (IRGC) (two groups formerly identified as complicit with Hamas, officially the Islamic Resistance Movement, in the massacre of Americans and others in Israel in October, 2023. Hamas' violent nature has been noted in several federal court decisions. *See In re Abu Marzook, 924 F.Supp. 565 (S.D.N.Y. 1996)* (recounting numerous incidents of Hamas terrorism against civilians in the Mideast), *U.S. v. One 1997 E35 Ford Van, 50 F.Supp.2d 789 (N.D.Ill.1999), Mousa v. Islamic Republic of Iran, 238 F.Supp.2d 1 (2001), Weinstein v. Islamic Republic of Iran, 184 F.Supp.2d 13 (D.D.C.2002) See In re Abu Marzook, 924 F.Supp. 565 (S.D.N.Y. 1996)* (recounting numerous incidents of Hamas terrorism against civilians in the Mideast), *U.S. v. One 1997 E35 Ford Van, 50 F.Supp.2d 789 (N.D.Ill.1999)* (describing Hamas' covert financial transactions in the U.S.), (D.D.C. 2000), *Eisenfeld v. Islamic Republic of Iran, 172 F.Supp.2d 1 (D.D.C.2000), Mousa v. Islamic Republic of Iran, 238 F.Supp.2d 1 (2001), Weinstein v. Islamic Republic of Iran, 184 F.Supp.2d 13 (D.D.C.2002).*

6.   The District Court of the District of Columbia has historically noted, the Islamic Revolutionary Guard Corps ("IRGC") is "the primary driver of Iran's terror activities." See Cabrera v. Islamic Republic of Iran, Civil Action No. 19-3835 (JDB) (D.C. July 19, 2022).

IRGC, also called Sepah or Pasdaran, is a multi-service primary branch of the Iranian Armed Forces, performs government functions for Iran, and is an instrumentality of that government.

7.   The Circuit Court for the District of Columbia held that "defendant[s] must generally be aware of [their] role as part of an overall illegal or tortious activity at the time [they] provide assistance." (*See Atchley v. AstraZeneca UK Ltd., 22 F.4th 204, 210* (D.C. Cir. 2022). "There is no specific intent requirement." *Id. at 221.* A "defendant need not be generally aware of its role in the specific act that caused the plaintiff's injury; instead, it must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was foreseeable," whether Defendant gave assistance "indirectly or indirectly," *Id. at 221*, and over a significant duration." Id at 224. (See *Honickman, 6 F.4th at 496* (emphasis in original) (citing *Halberstam, 705 F.2d at 477, 488*).(See *Honickman, 6 F.4th at 496* (emphasis in original) (citing *Halberstam, 705 F.2d at 477, 488*).

8.   Through abundant classified and highly informative U.S. and Allied intelligence provided by U.S. government agents and officials to the leadership of the Iraqi Kurdistan Regional Government, including Defendants Moore, Sanford, Obermayer et al, Halloran et al, on behalf of Defendant Barzani within the scope of their employment or office, and their representation of Defendant Barzani directly by Defendants Moore, Moore Law Offices, and Halloran, et al. and widely circulated media reports, and public designations of these organizations as foreign terrorist organizations, who utilized skill lawyers to organize corporate structures to secure illicit proceeds in the U.S. in violation of the Anti-Terrorism Act.

9.   Defendants were appreciably and unambiguously more than "generally aware" they were engaged in illegal activity, and falsely and fraudulently continued to conspire to keep Plaintiff as a fraudulent employee of Ingomar Fiduciary Services, Inc. a sham shell company

used to continue the MICCE network and were knowledgeable of public, classified, and unclassified U.S. Government and United Nations reports extensively documenting both the Iranian Government's role in terrorism Against America and American interests and the primary mission of IRGC, ISIS, and Hamas to engage in terrorist acts.

10. Defendants were aware of the lengthy forensic examination and briefing documents prepared at the Plaintiff's request by a former FBI Senior Executive detailing the various suspected financial crimes and other U. S. laws Defendant's MICCE network violated. Defendants' campaign of destruction and defamation against Plaintiff , outside of privileged communication, threats of unjust, unlawful malicious prosecution, and financial ruin, all continues to present day and has caused injurious harm to Plaintiff.

11. At all times relevant, Defendants provided legal counsel, and compensation to providing legal, national, economic information, contemporaneous tax and real estate, and organization structuring policy guidance. Defendants held and do hold frequent and documented informative regularly meetings in furtherance of MICCE, including the use of shell companies used to circumvent U.S. Patriot Act and banking rules, Anti-Terrorism Act, undermining the U.S. tax laws, orchestrating fraudulent claims and charges against the Plaintiff to continue to intimidate Plaintiff from providing future testimony against Defendants to U.S. law enforcement agencies and other civil actions currently pending before this and other courts. Disturbingly, Obermayer et. al.'s agent Leslie Spoltore, and Spoltore individually for example, conspiring with other Defendants, masterminded by Defendants Jonathon Moore and Hillary Davis, to file false contempt charges against Plaintiff, and harass and intimidate Plaintiff's children over Zillow apartment accounts or searches, including fabricating issues related to online websites,  in a continual stream of severe harassment and maliciousness.  The harassment

and extortive acts include attempting to unlawfully remove Plaintiff from her primary residence including her mother who is 83 years old, suffering from Stage 4 cancer, are unlawful acts of extortion and blackmail against Plaintiff. The harassment and defamation by Defendants including and specifically Spoltore, Moore, and Davis, have sought the continued harassment and intimidation of Plaintiff to silence her from cooperating with federal authorities involving Spoltore, Moore and Davis' direct knowledge of several dozen Italian beneficiary owned shell companies, incorporated in the State of Delaware, bank accounts opened without adherence to the U.S. Patriot Act including comingling Moore's personal accounts with these shell companies including Ingomar Fiduciary Services, Inc. Laws Offices of Jonathon Moore in addition to the companies specified in Plaintiff's original complaint. During the period of October 5, 2023-October 15, 2023, Defendants Moore and Davis visited companies and firms in Italy Defendants Jonathon Moore, Ingomar Fiduciary Services, Inc., and Law Offices of Jonathon Moore are directly associated with and continue MICCE by hiding their unlawful opening of of bank accounts by Defendants in conjunction with the October 2023 Italy visit by Defendants Moore, Law Offices of Jonathon Moore, and Davis, all acting and conspiring on behalf of MICCE, and are in violation of the U.S. Patriot Act. The harassment and extortive efforts include attempting to unjustly gain compensation for Davis' legal fees and cooperation with Defendants, as upon information and belief, she will be a key witness in several federal lawsuits and prospective federal agency actions against Defendants.

12. The Circuit Court for the District of Columbia held that "defendant[s] must be generally aware of [their] role as part of an overall illegal or tortious activity at the time [they] provide assistance." (*See Atchley v. AstraZeneca UK Ltd., 22 F.4th 204, 210 (*D.C. Cir. 2022). "There is no specific intent requirement." Id. at 221. A "defendant need not be generally aware

of its role in the specific act that caused the plaintiff's injury; instead, it must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury." Plaintiff commences this civil action for compensatory and punitive damages for torts for a continuing pattern of unlawful activity in violation of international and domestic law and claim relief against Defendants for compensable injuries sustained as a result. The alleged wrongful behavior can reasonably be expected to recur. Plaintiffs claim compensatory and punitive damages for crimes mental pain and suffering, defamation, and Anti-Terrorism Act violations.

**PARTIES**

**Plaintiff**

13. **Plaintiff, Mahtaub Moore**, is a citizen of the United States and resides in Delaware. She is of Persian-American descent and the only child of a former diplomat and social scientist who had high-positions with international organizations. Her late father was a world-renown author and speaker. Plaintiff, due to political and safety reasons, cannot after the 1978 Iranian Revolution, enter the country to visit relatives many of whom are oppressed and prohibited from leaving the country due to the family's dynastic history and notoriety abroad.

**Defendants**

14. **Defendant Jonathon R. Moore**: Defendant Jonathon R. Moore is an individual, and an attorney licensed to practice in Washington, DC and New York. His main office is in Washington, DC and has been active for over 35 years. Moore is the attorney of record for Masrour Barzani, and client of Defendant Obermayer and Eccleston. He is also a co-collaborator with Halloran et, al. to extract illicit proceeds through false contracts. Moore is the organizer and corporate officer and agent of numerous Defendant owned and consulted for sham companies and front organizations including Ingomar Fiduciary Services, Inc. He is a

resident of East Hampton, N.Y.

15. **Defendant Law Offices of Jonathon R. Moore, PLLC**: The law firm solely owned and operated by Defendant Jonathon R. Moore is a Professional Limited Liability Company in Washington, DC.

16. **Defendant Julie Sanford**: Julie Sanford is an individual and administrator of properties and manager, and corporate officer of front companies for Defendants and bookkeeper and digital record keeper for Jonathon R. Moore individually, Ingomar Fiduciary Services, Inc. sham company which placed Plaintiff as a fraudulent "employee" and for Law Offices of Jonathon R. Moore.

17. **Defendant Obermayer, Rebmann Maxwell & Hippel, LLP**: A law firm headquartered in Philadelphia, Pennsylvania and through their representative Leslie Spoltore, represents Defendant Moore and is the ring-master of the unlawful and malicious prosecution of Plaintiff for purposes of insurance fraud and intimidation to prevent truthful testimony.

18. **Defendant Leslie Spoltore**: Defendant Spoltore is an agent for Obermayer and representative and through her own individual acts, in excess of the limits of lawful representation and conduct, unethically and unlawfully has conspired with specifically Defendants Moore, Davis, Obermayer, Halloran, and Eccleston, et al., to obstruct justice related to the criminality of the continual criminal enterprise and Defendants and mastermind the campaign of harassment, defamation, and extortion of the Plaintiff.

19. **Defendant Hillary Davis**: Defendant Davis, is an accessory and co-conspirator friend and associate of the Defendants actively pursuing Plaintiff in a campaign of harassment, defamation, false accusations, and attempted extortion coordinated by Defendants to unlawfully and unjustly force Plaintiff to pay Davis to assist in legal fees and other financial benefits to

obstruct justice or future testimony of the allegations in this amended complaint. Defendant Davis expenses were paid by Defendants Moore, Law Offices of Jonathon Moore, subsidiary Ingomar Fiduciary Services, Inc. and other assets funding the visits to Italy in October 2023 and other meetings.

**20. Defendant Halloran, Farkas, Kittila, LLP:** A limited liability law firm with offices in Washington, DC and Delaware and through their representatives Theodore Kittila and William Green represent Defendant Masrour Barzani in businesses using illicitly gained proceeds organized by Defendant Moore.

21. **Defendant Eccleston And Wolf,  PC**: A professional corporation headquartered in Hanover, Maryland with offices in Washington, DC and through their representative Justin Flint represents Defendant Moore, Law Office of Jonathon Moore, and conspired with other Defendant Moore, Moore offices, and Defendant Barzani to injury Plaintiff's reputation and conspire with other Defendants to commit insurance fraud.

22. **Defendant Masrour Barzani, an individual**: Defendant Barzani, is the illegitimately elected self-proclaimed Prime Minister of the Kurdistan Regional Government in a non-democratic election not recognized by the U.S., U.N. and most international conventions and treaties as having been elected in a free and fair election. Upon information and belief, he is more of the Northern Iraq puppet for the Iranian regime. He holds a green card and has owned multiple residences in the United States.

23. **Defendants John Does 1-10:** Co-Conspirator of the Continuing Criminal Enterprise.

**JURISDICTION AND VENUE**

24. Plaintiffs have suffered severe injury in fact. These injuries were and are caused by the intentional and knowing conduct of the Defendants. The requirements of Article III standing are

familiar: First, the plaintiff must have suffered an injury in fact— – an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical. Second, there must be a causal connection between the injury and

the conduct complained of – the injury has to be fairly traceable to the challenged action of the

defendant, and not the result of the independent action of some third party not before the court.

Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a

favorable decision. *United States v. Windsor, 570 U.S. 744, 133 S.Ct. 2675, 2685-86, 186*

*L.Ed.2d 808 (2013)*). Plaintiffs satisfy all requirements of standing.

25. Venue is proper as these acts against Plaintiff were and continue to be orchestrated in

Washington, DC as the central and corporate office of Law Offices of Jonathon Moore and

Jonathon Moore personally, and Defendant Barzani.  And the amount in question is above

$75,000 and there is diversity of

Citizenship.

26. This Court has personal jurisdiction over the Defendants because Defendants had

contacts constituting purposeful activity with the District of Columbia and/or the United States.

*See International Shoe Company v. Washington, 326 U.S. 310, 316 (1945)*), and could have

anticipated being brought into court here. *See World-wide Volkswagon Corp. v. Woodson, 444*

*U.S. 286, 297 (1980)*. At all times relevant, Defendants had "continuous and systematic"

contacts between themselves and the District, as Defendant Moore's law offices are in

Washington, DC, Defendant Barzani's offices are in Washington, DC with continuous operations

in the District, retained lobbyists, representatives, and counsel in the District, and through the

acts of its and through the acts of its authorized agents, which give rise to general jurisdiction

over Defendants as they transacted business via wire, email communications, and internet as well

as travel to the United States for Defendant Barzani. *See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416(1984).*

27. This Court has personal jurisdiction over all the Defendants because "As to the extent of liability, once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action, as in the case of the getaway driver in Davidson [*Davidson v. Simmons, 203 Neb. 804, 280 N.W.2d 645 (1979)],Davidson v. Simmons, 203 Neb. 804, 280 N.W.2d 645 (1979)],* so long as the purpose of the tortious action was to advance the overall object of the conspiracy." In "civil conspiracy", "a conspirator can be liable even if he neither planned nor knew about the particular overt act that caused injury, so long as the purpose of the act was to advance the overall object of the conspiracy." *See Halberstam v. Welch, 705 F.2d 472, at 481 (D.C. Cir. 1983).*

28. With respect to conspiracy, the Supreme Court further stated: "Secrecy and Concealment are essential features of successful conspiracy. The more completely they are achieved, the more successful the crime. Hence the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others." *See Blumenthal v. United States, 332 U.S. 539, at 557.*

29. This Court "must assume the truth of facts plausibly alleged in plaintiffs' ... Complaint and draw all reasonable inferences in plaintiffs' favor." *See Atchley v. AstraZeneca UK Ltd., 22 F.4th 204, 210 (D.C. Cir. 2022). Owens v. BNP Paribas, S.A. (Owens IV), 897 F.3d 266, 272 (D.C. Cir. 2018). See Atchley v. AstraZeneca UK Ltd., 22 F.4th 204, 210 (D.C. Cir. 2022).*

*Owens v. BNP Paribas, S.A. (Owens IV), 897 F.3d 266, 272 (D.C. Cir. 2018).*

This Court has personal jurisdiction over the Defendants because they are individual, non-state defendants that have been and are doing business in Washington, D.C., have satellite offices in Washington, DC and operated in concert as an operative criminal conspiracy with an element of pecuniary gain and economic and physical threat and injury, and have a registered address at the official office of Defendant Moore individually and Defendant Moore Law Offices at 5335 Wisconsin Avenue, NW Washington, DC, where at all times relevant a staff was and is employed, are not immune from suit, are not relieved of responsibility under law, can point to no statute, decree, order, resolution, or comparable evidence of sovereign authorization for any of the actions in question, and are subject to this Court's jurisdiction. See 515 F.3d 1279 (D.C. Cir. 2008), 115 F.3d 1020 (D.C. Cir. 1997), and *Paul Rusesabagina, et al. v The Republic of Rwanda, et al. (Civil Case No. 22-469(RJL), U.S.D.C.D.C March 16, 2023).*

30. Defendants have purposefully directed tortious activity in this forum. Plaintiffs' claims arise out of, and relate to, Defendants' long-running conspiracy to cause pain And continue an international criminal enterprise injuring Plaintiff. Plaintiff is not the only link between Defendants and the forum; rather, Defendants' tortious conduct also forms the necessary connection. Defendants have repeatedly, purposefully, knowingly, and willingly defrauded Plaintiff and the United States; Defendants have repeatedly, purposefully, knowingly, and willingly defrauded the United States Government after having direct knowledge of the conspiracy in violation of money-laundering and terrorist funding laws of the United States. This tortious and criminal conduct by Defendants has provided the means for Defendants to damage Plaintiff.

31. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper in the United States District Court

for the District of Columbia because the Defendant Moore's principal place of business in the

is in the District of Columbia, Defendant Barzani's principal place of busines is in the  District of

Columbia in the United States, and  for all times relevant have and do maintain an office and

employed staff, and because a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred in this District. Defendants Obermayer, Halloran, at al, an Eccleston conspired

and have offices in Washington, DC. Moreover, Defendants Spoltore and Davis conspired with

the Law Offices of Jonathon Moore, Moore individually, and Davis specifically had almost all

expenses paid for the October 2023 Italy trip to meet clients who Defendants have direct

knowledge are in violation of the U.S. Patriot Act.  Plaintiff was made aware of these companies

Defendants continue to use her home as a "store-front" for corporations which were in violation

of the State of Delaware corporate statutes (Exhibit A). Plaintiff has direct knowledge these

corporations, from a credible legal source in Europe, all were visited by Defendants Moore and

Davis in October 2023, and the bank accounts and activities against the U.S. Patriot Act and

other U.S. laws.

32. To carry out their operative transnational criminal enterprise conspiracy, upon

information and belief, and at all times relevant hereto, Defendants purposefully made and

make U.S. dollar payments to terrorist and sanctioned intermediaries and others and wired funds

through U.S. banks for money laundering purposes including the use of sham companies to

structure and layer companies to avoid scrutiny. Defendants knew that their strategy to generate

complex contractual and corporate structures with corresponding bank accounts cash sources

through uncontrolled slush funds for their illicit transactions caused U.S. dollar, cash-based

protection payments to terrorists. Defendants knew that terrorists craved access to U.S. dollars,

terrorism against the United States." "The IRGC is 'the primary driver of Iran's terror

activities.'" "The IRGC protects Iran's regime and attempts to impose its clerical regime on other Muslim nations throughout the Middle East, providing military forces, directing much of Iran's economy, and implementing a global campaign of terrorist activity." *See Cabrera v. Islamic Republic of Iran, Civil Action No. 19-3835 (JDB) (D.C. Jan. 27, 2023)*. The United States designated Iran as a state sponsor of terrorism in 1984, and that designation has remained in place ever since. (The U.S. government often designates one element of a terrorist group before the group itself, like the IRGC's Qods Force (designated as an SDGT organization in 2007) and its parent group, the IRGC (designated in 2017)). *(See Cabrera v. Islamic Republic of Iran, Civil Action No. 19-3835 (JDB) at 17 (D.C. Jan. 27, 2023).)* By routinely and purposefully engaging in U.S. dollar-denominated transactions. Defendants, upon information and belief, and at all times relevant hereto, purposefully availed themselves of the benefit of business in the United States and corporate structures available to obfuscate illicit proceeds.

33. To carry out their conspiracy, upon information and belief, and at all times relevant hereto, Defendants, and their agents, representatives, and collaborators, purposefully made U.S. dollar payments to terrorist intermediaries and others that were wired through the United States. Indeed, Defendants' "preferred option" for paying terrorists was to make "bank transfer[s] in USD," which were designed to avoid detection by Defendants' auditors and governmental entities. And, those payments were protected and cloaked by hiring one another whereby illicit proceeds were deposited in attorney IOLTA accounts linked under Ingomar Fiduciary Services.

34. The United States Supreme Court also held that ""an overt act of one partner may be the act of all without any new agreement specifically directed to that act." ." See *United States v. Kissel, 218 U.S. 601, 608 United States v. Kissel, 218 U.S. 601, 608*. The United States Supreme Court further held that "The criminal intent to do the act is established by the formation

of the conspiracy. Each conspirator instigated the commission of

the crime. The unlawful agreement contemplated precisely what was done. It was formed for the

purpose. The act done was in execution of the enterprise. The rule which holds responsible one

who counsels, procures, or commands another to commit a crime is founded on the same

principle. That principle is recognized in the law of conspiracy when the overt act of one partner

in crime is attributable to all." *See Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180, 90*

*L. Ed. 1489, at 647 (1946).*

## DEFENDANTS' MINIMUM STATUTORY VIOLATIONS

35. By reason of the conduct alleged herein, the criminal and civil violations of

U.S. federal law, Presidential Executive Orders having force of law, and regulations, and treaties,

agreements, conventions, and international laws, knowingly or recklessly, directly or indirectly,

committed or caused to be committed by Defendants their co-conspirators, agents,

representatives, have been and are extensive in scope, complexity and longevity, and

criminal severity, and danger to the economic and national security interests of the United States

and its citizens, and injured Plaintiff, have repeatedly, purposefully, knowingly, and in

furtherance of multiple international and transnational criminal schemes and to effect its illegal

objects, including supportive acts of international terrorism and terrorism financing which hurt

Plaintiff unwittingly used as a front fake "employee," threatened court action of contempt,

defamed, libeled, and placed Plaintiff at risk which continues to the present, in a continuing

series of overt acts and violations following distinct U.S. federal statutory provisions, the

criminal violations condoned, taken, and being taken, directly and indirectly, by

the Defendants of each have provided the means for Defendants to injure Plaintiff

## STATEMENT OF FACTS

36. The continuing activities of Moore, Moore offices, their agents, associates, representatives, employees, collaborators, co-conspirators, in the Moore Ingomar Continuing Criminal Enterprise (MICCE) at all times relevant to the conduct described in this Statement of Facts, conducted with impunity, and unfailingly as individuals hiding behind shell and sham corporations and other organizational structures to protect Defendants Moore and Barzani and other Defendant's financial and business interests' continue to harm and injury Plaintiff by placing her as a "fraudulent" employee of a "sham" fiduciary company and using Plaintiff's heritage to orchestrate complicity in the MICCE network. Defendant's continue a campaign of harassment, threats, and extortion to continue to protect the MICCE network due to Plaintiff's potential testimony as a federal witness.

## FRAUD, DISINFORMATION,
## FALSE REPRESENTATIONS, AND DEFAMATION

37. Since at least 2007 and continuing to the present time, and on-going, and at all times relevant hereto, within the District of Columbia and elsewhere, the MICCE through a series of sham and shall organizations and their representatives conducted a  transnational criminal organization, using its skill as lawyers it engages and elsewhere in the world, has been successful in orchestrating a corrupt regime of concealment of its political and financial affairs involving large volumes of  cash proceeds totaling tens of millions of dollars or more, including the

laundering of narcotics and counterfeiting proceeds in order to evade detection. The skill of Defendants and in evading lawful financial reporting requirements to disclose beneficial ownership of Moore, Barzani, and its representatives including disclosures the true parties in interest owning assets and their willingness to facilitate their concealment regime through an

intricate web of real estate assets, private investment accounts, obscured ownership structures, and anonymous shell and front companies, and IOLTA accounts has been instrumental in its success to date.

38. The types of Defendants' real estate assets fall into five broad categories in numerous states: land/buildings, business facilities, retail spaces, agriculture, and residential properties. The Defendants' properties were involved in or are traceable to property involved in money laundering transactions or attempted money laundering transactions." *See U.S. v. All Assets Held at Bank Julius Baer & Co., 571 F. Supp. 2d 1, (D.C. 2008).*

39. For example, attorneys and their agents working for the MICCE, routinely file false or misleading certification documents to government agencies. The depth and extent of perfidy knows no bounds and includes false representations in judicial proceedings. An example of this is on June 14, 2024, Defendants Jonathon Moore, Obermayer, et al and their representative Leslie Spoltore, Spoltore individually, Hillary Davis, conspired with Defendant Halloran et al., and Defendant Eccleston, et al., and filed a malicious and false Contempt of Court and Rule to Show Cause against Plaintiff in a Delaware case regarding documents in order to satisfy insurance underwriters to fraudulently pay out claims. Spoltore on the behest of Defendant Obermayer, suggested the documents were "stolen" by Plaintiff and Defendants conspired to maliciously defame and prosecute Plaintiff.

40. Plaintiff complied well before the deadline however, as recent as June 19, 2024 Defendants deliberately and voluntarily outside of privileged communication, falsely and in judicial proceedings made the following representations which are false, misleading, malicious, and libel and slander, which "constitutes a breach of professional ethics and invites disrespect for the integrity of the court." (*See Wheat v.United States, 486 U.S. 153, 108 S. Ct. 1692, 100 L. Ed.*

2d 140 (1988), quoting *United States v.Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978)*, and which

violate Federal Rule of Civil Procedure 11(b)(3):

      (a) Plaintiff stole documents from the MICCE

      (b) Plaintiff's theft is on a scale as to file an insurance claim

      (c) Plaintiff has committed contempt of court and is violation of court
         orders.

      (d) Plaintiff's testimony is untruthful, false, and without credibility.

      (e) Plaintiff has engaged in harassment of others when Plaintiff has a
         lawful obligation to give truthful testimony under a subpoena and to
         federal law enforcement authorities.

    41. The documents in question are federal evidence were originally abandoned against

professional ethics rules of the DC Bar by Defendant Moore and Defendant Moore offices. In

2023, Plaintiff wrote Michael Adams, head of Ethics for the District of Columbia,

concerned the files were abandoned. (Exhibit B). All Defendants know of this communication

and as such all statements as outlined herein are false and were made knowing they are false and

defame Plaintiff.

    42. In addition, Plaintiff was fraudulently placed as an employee of the sham corporation

Ingomar Fiduciary Services, Inc. in 2016 for the sole purposes of tax avoidance, tax fraud, and to

circumvent U.S. Patriot Act laws, Plaintiff upon learning of Defendant Moore, Defendant

Sanford, and Defendant Barzani Plaintiff misconduct demanded for Defendants rescind phony

W-2's given to her over a 6 year period which included the use of Plaintiff's personal expenses

as "unqualified and false tax deductions." Plaintiff demanded Defendant Halloran, et al., cease

and desist all use of her social security number and other personal information to file IRS forms

in January 2024.

43. Defendants in continuance of the MICCE falsely painted Plaintiff as a thief of the documents and used these allegations, upon information and belief, have filed a false insurance liability claim to receive a massive insurance payout for the financial benefit of Defendant Masrour and Defendant Moore and specifically further the financial wrong-doing perpetrated for years supported and conspired by the other Defendants.

44. In fact, the "factual" allegations concerning Plaintiff Moore are a knowing and willful, deliberate and voluntary, deceitful and deceptive attempt to discredit him, are blatantly and manifestly false and unpersuasive, are literally, deliberately, and factually untrue, are "particularly reprehensible" (*See Gertz v. Robert Welch, Inc., 418 U.S. 323, 376, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974)*, due to Plaintiff's discovery of criminality by Defendants. Plaintiff also received death threats on March, 8, 2024, via a large suspicious package with threats at her home after she was exposing Defendant Moore and Defendant Barzani and Defendant Halloran's clients for violating U.S. laws in court documents.

*45.* An attorney's right to free speech while litigating an action is extremely circumscribed." *See King v. Whitmer, 505 F. Supp. 3d 720 (E.D. Mich. 2020). Mezibov v. Allen, 411 F.3d 712, 717, 720-21 (6th Cir. 2005)* (quoting Gentile v. State Bar of Plaintiff has "suffered an 'injury in fact' –an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).*

46. Defendants Obermayer, et al., Halloran, Moore, Spoltore, and Moore Law Offices, and their agents did "at a minimum express, state, and imply a verifiably false fact about [Plaintiff Moore]." *See Zimmerman v. Al Jazeera America, LLC, 246 F. Supp. 3d 257,276 (D.C. 2017).* Their statements fall into no privileged category of speech. The Supreme Court declared, "practices long accepted by ethical lawyers is that under no circumstance may a lawyer

either advocate or passively tolerate a client's giving false testimony" … and "in no sense means a lawyer can honorably be a party to or in any way give aid to presenting known perjury." "No system of justice worthy of the name can tolerate a lesser standard." *See Nix v. Whiteside, 475 U.S. 157, 174, 106 S. Ct. 988, 89 L. Ed. 2d 123, (1986).* The Supreme Court further opined, "To a wide and deep extent, the law depends upon the disciplined standards of the profession and belief in the integrity of the courts." (*See Schware v. Board of Bar Examiners of NM, 353 U.S. 232, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957*).

47. Defendants' as attorney's representing segments of the MICCE to make such false allegations in a pleading in this Court is to again illustrate the total and absolute public disrespect and contempt the MICCE has for the United States and its laws and institutions, including this Court. In view of personal participation, as set forth herein, in the MICCE scheme and course of conduct to hide true ownership identity and money and assets in the United States and elsewhere in the world that are the fruits of unlawful activities, the false pleading representations by him are particularly troubling. Pleading false and willful misrepresentations, made with knowledge of its falsity or with gross indifference and reckless disregard as to its truth or falsity, is egregious professional misconduct, beyond garden variety neglect (*See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)*, is not excusable neglect, fails to meet the District of Columbia Circuit standard, and is material. "A fact is 'material' if it could affect the substantive outcome of the

48. Beginning on a date unknown but at least by 2007 and continuing through in or around the present time, and knowingly harmed Plaintiff by placing her as a "sham" employee of Ingomar Fiduciary Services, Inc, a shell organized on and around 2006 as Ingomar Services, Inc., in the District of Columbia and elsewhere, Defendants Moore, Moore Law Offices,

Sanford, and Barzani commenced the MICCE as middlemen to further disguise and

legitimate the corrupt payments and complicit intermediaries in facilitating transactions, together

with others, including accountants, to accomplish its purpose did, in a continuum of complicity

and enterprise corruption in an international conspiracy, devise and engage in a multi-million

dollar scheme or course of conduct and conspiracy with affirmative, planned, and deliberate acts

of concealment and methods of obfuscation that they have repeatedly used, in the United States

and abroad, to carry out financial crimes, masterminded by Defendant Jonathon R. Moore who

frequently collaborated with Sanford and Barzani as agents of a foreign principal, and their

foreign sponsors, and did knowingly, unlawfully, deliberately, voluntarily, and corruptly agree to

cooperate in a fraudulent scheme or course of conduct or shared a perfidious purpose and did

demand, seek, receive, accept, and agree to receive and accept illicit foreign funds, and did

knowingly and unlawfully combine, conspire, confederate, and agree together and with each

other to devise and intend to devise a scheme or course of conduct and artifice to defraud and to

deprive, by means of material false and fraudulent pretenses and representations, to conceal

source and ownership, knowing that the transactions were designed in whole and in part to

directly and indirectly achieve the criminal object of the MICCE, and knowing that the property

involved in the financial transactions represented the proceeds of some form of unlawful activity,

including funds embezzled from state coffers of Iraqi Kurdistan Regional

Government and the U.S. Government which transactions in fact involved the proceeds of

specified unlawful activity, and using their specialized expertise to hide the ill-gotten gains of the

MICCE, obscure their nefarious activities, and employ money laundering mechanisms and did

launder proceeds generated by and did aid and abet bad acts committed by the malign actors of

the MICCE, many of whom are agents or officials of subdivisions of a foreign government,

regardless of the predicate criminal activity, that they "knew were designed to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of [the] unlawful activity," *See US v. Harmon, 474 F. Supp. 3d 76, 83 (D.C. 2020)*, and played lucrative roles, and did financially profit from the criminal activities of BCCE, as a center for discrete illicit financial dealings, within the District of Columbia and elsewhere, designed to conceal including fake representations concerning ownership structuring, of international money laundering through a series of complex transactions and shell or front companies with bank a accounts, some opened by Defendant Moore and/or his subordinates in the U.S. without disclosing as required under the U.S. Patriot Act the foreign beneficial owners or percentage of ownership of the corporations owning said bank accounts, located in the United States and abroad, in this country in whole or in part, repeatedly performed in furtherance of object of the conspiracy and the conspirators' plan and scheme or course of conduct or artifice to launder millions of dollars of ill-gotten criminal proceeds derived from or obtained, directly or indirectly, through the commission of a crime unquestionably in connection with a commercial activity of Defendants including the MICCE network. *See 28 U.S.C. § 1605(a)(2)* and numerous other anti-money laundering laws and regulations.

49. Indeed, the type of the activity at issue here is far from analogous to the type of activity that courts have described as "sovereign" in nature. *See, e.g., Weltover, 504 U.S. at 614, 112 S.Ct. 2160.* Defendant Barzani and other family have been illegitimately been in power in Iraqi Kurdistan for decades, and the corruption of the regime has been widely reported in Department of State reports and the international media, including substantial misappropriation, theft, and embezzlement of billions of dollars from the Kurdistan treasury, some of which was used to purchase luxurious properties  in the United States for use of

Defendants Moore, Moore Law Offices, Barzani, and Sanford including funneling proceeds
through accounts to Defendant Halloran et al. The funds used to acquire these
properties and bank accounts are traceable to violations of specified unlawful activities and U.S.
law, that is a foreign offense involving the misappropriation, theft, or embezzlement of public
funds by or for the benefit of a public official, and the international transportation or receipt of
stolen of fraudulently obtained property (81 U.S. C. 1956(c)(7)(B)(iv) and 1956(c)(7)(A)
respectively).

50. Each of these acts were commercial because they were not acts "only a sovereign state
could perform." *See Park v. Shin, 313 F.3d 1138, 1145 (9th Cir.2002)*. The effect is "direct" as it
follows "as an immediate consequence of the defendant's... activity.") *See Weltover, 504 U.S. at
618, 112 S.Ct. 2160*. "The common-sense interpretation of a direct effect ... is one which has no
intervening element, but, rather, flows in a straight line without deviation or interruption."
*Guirlando, 602 F.3d at 74-75* (quotation marks and citation omitted), and occurred in the instant
matter. A U.S. regulator or law enforcement entity was precluded from identifying the beneficial
owner because all shell and front companies were identified solely by a registered Agent or the
law firm or one of its subsidiaries, primarily the law office of Defendant Jonathon R. Moore and
Ingomar Fiduciary Services, Inc. (a Delaware corporation since 2000, with its offices registered
with agencies of the State of Delaware at Defendant Moore's Washington DC law office and
since 2016 at his former residence in Wilmington Delaware) and Ingomar Services, Inc. (no
longer active), named after the residential street where Defendant Moore lived at 4111 Ingomar
Street NW, Washington DC 20015, wholly owned and operated by Defendant Moore and of
which he is President, and not a true owner or anyone actually associated with the shell or front
company or trust entity.

51. Ingomar Fiduciary Services, Inc. engages in a substantial, continuous, and systematic course of business, and was and is so dominated by Defendant Moore as to be his alter ego and a repository of at least some of the criminal proceeds monies transferred to the United States by Defendants, and the assets of the corporation actually belong to Defendant Moore or to MICCE Defendants. There exists a unity of interest, the identical ownership and control, commingling and diversion of funds and assets, and use of the same office and business location. Separate personalities of Defendant Moore and Ingomar Financial  Services, Inc. do not exist. As the Supreme Court explained in Wellness Intern. *Network, Ltd. v.Sharif, 575 U.S. 665, 135 S. Ct. 1932, 1953,191 L. Ed. 2d 911 (2015)*, quoting *Sampsell v. Imperial Pape & Color Corp., 313 U.S. 215, 218, 61 S.Ct. 904, 85 L.Ed. 1293 (1941)*, "'[m]ere legal paraphernalia will not suffice to transform … a corporation whose affairs are so closely assimilated to the affairs of the dominant stockholder that in substance it is little more than his corporate pocket.'" Through Ingomar Fiduciary Services, Inc., Defendant Moore "concealed assets and transactions under the veil of a corporate entity that was 'nothing but a sham and a cloak.'" *Wellness, 757 U.S. 665, 1953*, citing *Sampsell, 313 U.S. 218*. Ingomar Fiduciary Services, Inc. was an "alter ego or business conduit of the person in control." *See Labadie Coal Co. v. Black, 672 F.2d 92, 97 (D.C. Cir. 1982)*. Defendant Moore's "control over" Ingomar Fiduciary Services, Inc. was "active and substantial," and "so dominated the [] corporation as to negate its separate personality." *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 62 F.Supp.2d 13, 20 (D.D.C. 1999)*. "[A]dherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *See Diamond Chem. Co. v. Atofina Chems., Inc., 268 F.Supp.2d 1, 9 (D.D.C)*; see also *In re Baan Co. Secs. Litig., 245 F.Supp.2d 117,129, (D.D.C.2003)*.

52. The Plaintiff has suffered past injuries-in-fact, "an invasion of a legally protected

interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016)* (quoting *Lujan, 504 U.S. at 560*). There exists a "substantial risk" that threatened future injury will occur. *(See Stringer v. Whitley, 942 F.3d 715, 721 (5th Cir. 2019)(See Stringer v. Whitley, 942 F.3d 715, 721 (5th Cir. 2019)).* Thoroughly documented past harms constitute an injury-in-fact for purposes of pursuing injunctive relief as they cause "continuing, present adverse effects." *See City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974)).*

53. Defendants Jonathon R. Moore, and others, knew that the transaction or transactions were designed in whole or in part to conceal or disguise the nature, location, course, ownership, or control of the proceeds, in whole or in part of that unlawful activity in federal or foreign law, and in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and to avoid reporting requirements, and to evade, inter alia, U.S. regulations and tax laws by establishing sham or front corporations and opaque structures in order to conceal in records, documents and tangible objects their clients' true beneficial ownership from United States taxes. Defendants also knowingly, willfully, deliberately, and fraudulently treated sizable expenses for purported "client reimbursable" to pay expenses of client investments and properties. Money movement was knowingly, deliberately, and frequently falsely declared as "loans" papered with promissory notes, agreements, etc.

54. Defendants did knowingly and willfully conspire and collude to defraud the United States by impeding, impairing, influencing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service ("IRS") in the ascertainment, computation, assessment and collection of revenue, thereby enriching the MICCE through structures organized by

Ingomar Fiduciary Services, Inc. The monetary gains achieved provided a major source of

resources enabling the MICCE to harm Plaintiff by threats of prosecution, fear, and other

aggressive acts.

45. Defendants acting together, are both subject to a range of

ethical obligations and the Code of Professional Responsibility of the District of Columbia Bar

and most Bar associations including the Delaware Bar, in the words of the Supreme Court, each

has a "solemn duty to comply with the law and standards of professional conduct." *See Nix v.*

*Whiteside, 475 U.S. 157, 169, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986).* The Supreme Court

further declared, "Although counsel must take all reasonable lawful means to attain the

objectives of the client, counsel is precluded from taking steps or in any way assisting the client

in presenting false evidence or otherwise violating the law. This principle has consistently been

recognized in most unequivocal terms by expositors of the norms of professional conduct since

the first Canons of Professional Ethics were adopted by the American Bar Association in 1908.

The 1908 Canon 32 provided:

"No client, corporate or individual, however powerful, nor any cause, civil or political,

however important, is entitled to receive nor should any lawyer render any service or

advice involving disloyalty to the law whose ministers we are, or disrespect of the

judicial office, which we are bound to uphold, or corruption of any person or persons

exercising a public office or private trust, or deception or betrayal of the public. . . . He

must . . . observe and advise his client to observe the statute law . . . ."These principles

have been carried through to contemporary codifications[4] of an attorney's professional

responsibility. Disciplinary Rule 7-102 of the Model Code of Professional Responsibility

(1980), entitled "Representing a Client Within the Bounds of the Law," provides:

>    **In his representation of a client, a lawyer shall not:**
> **4. Knowingly make a false statement of law or fact.**
> **5. Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.**
> **8. Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule. (See Nix v. Whiteside, 475 U.S. 157, 166, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986)."**
> **Disciplinary Rule 1-102: "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."**

Each betrayed the law as they, with colleagues, explicitly declared in written

communications to Defendants and others that the purpose of the

transactions and structuring scheme and course of conduct they intended to devise and did devise

to circumvent federal laws, transmitted by means of wire communications in interstate and

foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme

and course of conduct and artifice, was to conceal the ownership and source of proceeds of

unlawful activities and criminality, disguise the identities of those involved in unlawful

activities, and evade and violate U.S. securities and tax laws by establishing sham and front

Limited Liability Corporations layered to conceal their clients' true beneficial ownership.

Defendant Jonathon R. Moore, aided and abetted by Defendant Sanford and Defendant Barzani,

are engaged by and associated with the MICCE, primarily in Washington DC, where

he oversaw complicit administrative staff, each accomplices, for various shell and front

corporations and other opaque corporate ownership structures, as a tool to disguise and move

illicit funds, the structure of which he created, incorporated, oversaw, and was at various times a

corporate officer thereof, and served as an access point to the U.S. financial system. Acts of

Defendants were "purposefully directed" at this forum, and the litigation results from alleged

injuries that "arise out of or relate to those activities." *Mwani v. bin Laden, 417 F.3d 1, 12*

*(D.C.Cir.2005) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79*

*L.Ed.2d 790 (1984);Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868).*

55. Defendant Moore managed financial accounts for, of, and on behalf of various shell corporations set up by Ingomar Fiduciary Services, Inc. and front corporations and trusts in the United States and in offshore banking jurisdictions. Defendants, by manipulative or deceptive device, with an emphasis on concealment, intentionally concealed the scheme and course of conduct by entering into secret agreements, laundering foreign money through bank accounts in the names of limited liability corporations and trusts, and through the use of conduits, rather than in the name of the true foreign source and foreign ownership of funds. Agreements to conceal can factually be parts of conspiracies to commit other crimes of whom are citizens of the United States, and others, conspired and colluded with one another to use their positions within the to enrich themselves through schemes and course of conduct involving undisclosed and illegal payments.

Though they also helped pursue the principal purpose of the MICCE, Defendant Jonathon R. Moore and his co-conspirators further corrupted the MICCE by engaging in various criminal activities, including concealment and money laundering, in pursuit of personal gain. To further the corrupt ends of the MICCE, Defendant Moore and Defendant Sanford,

and co-conspirators facilitated the enterprise by providing each other with mutual assistance and coordination. From the beginning the conspirators insisted on secrecy, and careful deliberate steps, not ancillary but integral, were taken to sedulously keep hidden the identities of the Defendant Barzani, and a continuation of the overt conspiratorial acts of secrecy after the accomplishment of the crime in furtherance of this conspiracy. The conspirators engaged in conduct designed to prevent detection of their illegal activities, to conceal the location of proceeds of those activities, and to promote the carrying on of those activities. That conduct

included, among other things: the use of contracts to create an appearance of legitimacy for illicit payments; the use of various mechanisms, including trusted intermediaries, bankers, and financial advisors, to make and facilitate the making of illicit payments; the creation and use of shell and front companies and bank accounts in tax havens and key outposts in the offshore financial system and other secretive banking jurisdictions; the active concealment including the execution of "secrecy agreements" with real estate brokers and agents, vendors, and real estate sales contracts, of foreign ownership; the structuring of financial transactions to avoid reporting requirements; the purchase of real property and other physical assets; and income tax evasion. Within the United States, such conduct took place within the District of Columbia and elsewhere. Adding layers of legal representation and corporate structures, Defendant Moore, Defendant Moore Law Offices, and Defendant Barzani used Philadelphia law firm Cozen to continue to hide their criminal activity as reported by the *American Prospect* in December 7, 2021 titled, *Cowboy Drugstore: Trace of a Kleptocrat from Iraq to Delaware to Miami*.

56. Beginning at least by 2007 and continuing to the present time, the shell company Ingomar Fiduciary Services, Inc. caused millions of dollars associated with the fraudulent scheme or course of conduct to be wired from banking institutions and other financial entities outside and inside the United States into accounts controlled or overseen by Defendant Moore, Moore Law Offices, Defendant Sanford, an Defendant Barzani. The pattern of unlawful activity through which the defendant Jonathon R. Moore, assisted by Defendant Moore Law Offices and Sanford, together with others, agreed to conduct and participate, directly and indirectly, in the conduct of financial affairs of the MICCE consisted of multiple acts unlawful under: (a) Title 18, United States Code, Section 1343 (wire fraud, including honest-services wire fraud) ; (b) Title

18, United States Code, Sections 1956 and 1957 (money laundering and money laundering

conspiracy) ; (c) Title 18, United States Code, Section 1952 (interstate and foreign

travel in-aid-of racketeering) ; and (d) Title 31, United States Code, Sections 5314 and 5322

(willful failure to file report of foreign bank and financial accounts). At all times relevant,

pursuant to Title 31, Code of Federal Regulations, Sections 103.24, 103.27(c), 103 . 27(d) and

103.59(b), citizens and residents of the United States who had a financial interest in, or signature

authority over, a … financial account in a foreign country with an aggregate value of more than

$10,000 at any time during a particular year were required to file with the United States

Department of the Treasury a Report of Foreign Bank and Financial Accounts on Form TD-F 90-

22 (the "FBAR"). The FBAR for a given year was due by June 30 of the following year.

Defendant Jonathon R. Moore, then a resident of the District of Columbia, had signature and

other authority over one or more financial accounts, having an aggregate value exceeding

$10,000. Within the District of Columbia and elsewhere, did knowingly and willfully fail to file

with the United States Department of the Treasury a Report of Foreign Financial and Bank

Accounts on Form TD-F 90-22.1, disclosing that they had signature and other authority over one

or more financial accounts in foreign countries, which account(s) had an aggregate value of more

than $10,000, while violating another law of the United States, to wit: Title 26, United States

Code, Section 7201.

57. Defendant Jonathon Moore often maintained bank cash accounts in the

United States on behalf of Defendant Barzani using Ingomar Fiduciary Services, Inc and

Plaintiff's phony employee status to organize structures using Plaintiff for tax avoidance and

fraud, the wiring of many millions of dollars and to hide millions of dollars of revenue using

Plaintiff's personal expenses as deductions and reimbursables. As part of the pattern of illegal

activity employed, Defendants used facilities of interstate or foreign commerce with the intent to

distribute the proceeds of unlawful activity and to conceal the source, ownership, and control of

the funds. The funds were ultimately passed through U.S. financial

institutions to then be used to acquire and invest in assets located in the United States and

overseas, titled not in defendants' names but in the name of shell or front companies and trusts

and other legal arrangements formed and organized by Defendant Jonathon R. Moore and his

associates in complex ownership and control structures adding layers and chains of ownership

between an asset and the beneficial owner(s) in different jurisdictions and countries, and

different types of legal structures, for the purpose of enhanced anonymity and intentional

concealment and obscuring beneficial ownership information, to conceal material facts, to

protect their corrupt relationship with the beneficial owners and others, including concealing

assets of individuals who did support ISIS, a terrorist organization that has committed acts of

violence against Americans, to avoid detection by law enforcement, taxing authorities, and

national security officials including by using shell or front names and addresses when conducting

international electronic money transfers, and holding in whole or in part the proceeds of crime.

58. On and around September 2023, Plaintiff's expert forensic consultant and former FBI

senior executive presented a "briefing document" on the function of Ingomar Fiduciary Services,

Inc., Law Offices of Jonathon Moore and documents which were her property regarding

personal financial ledgers and information available on public databases and state corporation

commissions.  The document herein described as "briefing document" exposed far-reaching

criminality in which Defendant Obermayer, Halloran (who Barzani hired at the encouragement

of Defendant Moore and Defendant Moore and Defendant Moore Law Offices had an interest in

Halloran, et. al. to take over the Ingomar business) presented false information before civil and

federal actions to obfuscate the true facts involving Defendant Moore, Defendant Barzani, the other Defendants' financial interests and defame, defile, and destroy Plaintiff who possesses key evidence of the MICCE organization and activities.

59. Defendant Moore, individually and Defendant Moore Offices, co-conspired with Defendant Obermayer and Defendant Halloran, et al., and Defendant Barzani falsely accused Plaintiff of "stolen" evidence or documents as Defendant Moore retrieved only a few files with moving company on and around the period of September 2023.  Defendants sought in January of 2024, an order for Plaintiff "to return records" Plaintiff either did not hold or had no knowledge of their existence.  Plaintiff sent several remaining files left by Defendant Moore including incriminating evidence of MICCE's continued activity by Federal Express, proof of delivery signature required and pictures of the boxes interestingly are all of shell companies of Defendant Barzani, Moore, and were structured by Defendant Moore and Sanford (Exhibit C).

60. Plaintiff learned Defendants' use of Ingomar Fiduciary Services, Inc was to create structuring and layered corporations to circumvent U.S. laws including laws pertaining to terrorist funding and assistance. In this instance, the ownership structures were knowingly and willfully organized and created in a "convoluted character associated with money laundering" "designed to disguise ownership and evade transaction reporting requirements," *See United States v. Adefehinti, 510 F.3d 319, 324 (D.C.Cir. 2007)* and utilized "for the sole purpose of holding legal title to these properties," "to conceal ownership", to "protect the family's privacy", to "keep Barzani brothers private", to "interpose a foreign corporation (and initially a trust) between the LLC's and the beneficial owners of each property," to prevent "anyone from connecting the dots", and to launder proceeds of crime by the MICCE. "Each piece of real property would be owned by a separate LLC." These anonymous shell companies created by

Ingomar Fiduciary Services, Inc. and using Plaintiff as a decoy employee, used the U.S. financial system for their anonymous owners' benefits. For various limited liability companies and corporations, millions of dollars of funds were periodically replenished by foreign funds. These shell and front limited liability entities were and are owned by holding companies and trusts in the British Virgin Islands, a key outpost in the offshore financial system, formed by Defendant Jonathon R. Moore and his associates under the laws of a foreign jurisdiction to disguise beneficial ownership of and launder illicit wealth, while specifically and purposefully maintaining a level of complete anonymity for the true owner, and splitting company incorporation and asset administration over different countries. For example, to conceal the true ownership of property and create anonymity while laundering illicit proceeds, Defendant created a British Virgin Islands holding company with a Washington, D.C. address. It in turn owns Real property in Mebane, North Carolina. Defendant Julie Sanford is the manager of both examples. In another example, Defendant Sanford to disguise assets associated with Defendants Moore, Defendant Moore offices, and Defendant Barzani, often changed the EIN numbers of the profit sharing plans named Moore & Bruce Profit Sharing LLP which is public record on the Department of Labor online database, to disguise ownership and transferred from Defendant Law Offices of Jonathon Moore Ingomar Fiduciary Services, Inc. treating it as an "umbrella" of Moore Law Offices.  This was changed as recently as 2023 to hurt Plaintiff financially by hiding the true nature of assets and schemes of Ingomar Fiduciary Services, Inc. and Defendants' misconduct. In addition, multiple luxury automobiles were purchased through these illicit proceeds including seven-figure certified checks from PNC bank payable from the years 2012-2019 to Lamborghini Ferrari of Ft. Lauderdale, FL personally carried by Defendant Moore and through Ingomar Fiduciary Services, Inc.

61. The use of Plaintiff as a sham employee siphoned off hundreds of thousands in unqualified tax deductions and expenses associated with Ingomar Fiduciary Services, Inc. exposing Plaintiff to liability and association with companies engaged in an ongoing criminal transnational enterprise in violation of anti-terrorism funding laws, OFAC, and all of which exists to this day. Plaintiff's home continues to be used as a "store-front" for Defendant's misconduct including the use of Plaintiff's address to commit Immigration fraud as Plaintiff received a Homeland Security Immigration application verification for an individual unknown to her and a corporation also unknown. The individual's application for a work visa, interestingly from the Netherlands where Defendant Barzani has contacts and is the residence of his chief operating officer of multiple corporations. Plaintiff in November 2023 reported the falsehood of using her address for such applications to Homeland Security.

62. Plaintiff, under a civil order in Delaware, sent all files and documents under a court order on March 1, 2024, and secured Federal Express proof of delivery signed by Defendant Moore and Defendant Moore Law Offices as shown in Exhibit B. Defendants Obermayer through their agent Leslie Spoltore, Spoltore, Davis, and Defendant Halloran, et al., had absolute ocular evidence all documents were delivered including documents, upon information and belief, demonstrate the MICCE criminality of money-laundering and terrorist funding associated with Ingomar Fiduciary Services, Inc. and Defendants support thereof. Specifically, and in furtherance, Defendants Spoltore on behalf of Obermayer, Spoltore an individual has sought to quash and suppress important evidence in Delaware of Defendant Moore and MICCE's criminal conduct and Defendant Halloran, et al., has sought to continue to accept funds in their IOLTA account from Defendant Barzani, in another scheme devised by MICCE and protect Defendant Moore's involvement.

63. Defendant Moore, Defendant Sanford, and Defendant Barzani were sued in an amended complaint on April 30, 2024, in the U.S District Court for the District of Columbia case *Kurdistan Victims Fund, et al., v. Masrour Barzani, et al., 1:24-cv-00278* for allegations of terrorist financing, money-laundering, conspiring to violate the Alien Tort Claims Act and a myriad of other alleged terrorist financing violations.

64. Ominously, on the same day Defendant Moore was served the U.S. District Court suit, Defendants conspired to harm Plaintiff and filed a contempt of court order which Plaintiff complied with on March 1, 2024.  Defendants sought to destroy Plaintiff's credibility and intimidate her from any future testimony to law enforcement by filing the Rule to Show Cause for contempt.  Defendants have direct knowledge the pleading is false, untrue, and maliciously filed to protect MICCE's corrupt activities.

65. Defendants' conspired to accuse Plaintiff of theft and contempt to further their financial gain and obstruct justice by filing a malpractice liability claim with the underwriter from Defendant Moore and Defendant Moore Law Offices which would be paid to Defendant Barzani and the other Defendant's for service rendered.  On June 11, 2024, Plaintiff learned Defendant Eccleston and Wolf would be filing such a claim with the coordination of the other Defendant's blaming the "loss" of documents, now key civil and potentially criminal federal evidence, on Plaintiff.

66. In an email to Justin Flint, a representative of Eccleston and Wolf, Plaintiff sent a picture of document and server abandoned by Defendant's and Defendant Moore Law Offices. Defendants are fearful of gathering these abandoned files as they are federal evidenced exposing MICCE's conduct. (Exhibit D). Eccleston and Wolf and the other Defendants are complicit in providing false and misleading information to the professional liability underwriter documents

were stolen to satisfy the insurance company requirement committing insurance fraud.

## COUNT I

## LIBEL AND DEFAMATION OF CHARACTER OF PLAINTIFF MAHTAUB MOORE

67. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth fully herein. This defamation action arises from false and defamatory and libelous statements by Defendant's outside of privileged communication, circulated outside of privileged communication and published online by the Court, available to readers, particularly with the high-profile international press news covering the Defendants.

68. Defendants presented false and libelous information which are to be believed due to their standing as bar members or public officials.

69. The substantial danger of injury to Plaintiff Mahtaub Moore from Defendants false statements, in particular Obermayer, et al through their representative Leslie Spoltore, Spoltore as an individual Moore, individually, and Defendant Davis are greater than that suffered by the public at large, is readily apparent.

70. Such statements, which Defendants knew or should have known, would harm the reputation of another as to bring a grave disadvantage to her reputation before any court of law, public arena, or credibility in testimony before Congress.

71. By publishing the false statements, Defendants caused harm and cognizable injury to the Plaintiff including credibility with insurance companies which were directly and deliberately contacted by Defendant's with the intent to spread falsehoods and injury against Plaintiff Moore

72. At the time of the publication, Defendant's, particularly Leslie Spoltore, representative of Obermayer, et al., Spoltore, an individual, Moore, Law Offices of Jonathon Moore, Halloran, et al., Ecclestone, with Davis, knew or reasonably should have known these statements were

false, and were part of no privileged category. Defendant's statements meet the threshold requirements of defamation, that they were statements not of opinion, but that could be proved to be accurate or false.

73. Defendants' false statements are defamatory and libelous per se because they impute to Ms. Moore the commission of crimes and contempt violations which were and are untrue. Specifically, to conceal the facts of criminality and continue to violate the U.S. Patriot Act and protect the other Defendants Spoltore and Davis have sought to destroy Plaintiff orchestrating falsehoods in lower court actions and to conceal Davis' knowledge of the numerous Italian companies Plaintiff has learned were part of the MICCE network. Defendant's false statements prejudice Ms. Moore before the public, a court of law, or in

Congress. Ms. Moore is therefore entitled to presumed damages.

74. As a direct and proximate result of these false statements by Defendant's, Ms. Moore has suffered immediate and incalculable damages, including, inter alia, injury to her reputation harm to his ability to carry on in his profession and career, embarrassment,

humiliation, and emotional distress, in an amount to be determined at trial.

75. Defendants' actions were malicious, willful, and wanton, and evidence a conscious disregard for Ms. Moore's rights. The injury is directly traceable to the challenged action of the defendant. Accordingly, punitive damages are appropriate.

Venue is proper in this Court because the causes of action asserted herein arose in this District and caused tortious injury by his act.

WHEREFORE, Plaintiff respectfully requests that the Court enter an award in Plaintiff's favor and against Defendants, as follows:

(1) Awarding Ms. Moore compensatory damages of not less than

$5,000,000, or in such additional amount to be proven at trial;

(2) Awarding Ms. Moore punitive damages to the maximum extent

permitted by law, but not less than $10,000,000;

(3) Awarding Ms. Moore all of his expenses and costs, including future attorney's

fees; and

(4) Granting such other and further relief as the Court deems appropriate.

**COUNT II**
**ANTI-TERRORISM ACT – 18 USC 2333**
**[All Defendants: Aiding-And-Abetting Liability, Attack Predicate]**

76. Plaintiffs reallege and incorporate by reference the allegations and preceding

Paragraphs as if fully stated herein.

77. The Anti-Terrorism Act (ATA) is an exercise in universal civil jurisdiction, as it

extends domestic judicial jurisdiction over actions that occurred abroad to foreign plaintiffs; it

has historically been a means for non-U.S. citizens to seek redress for serious human rights

violations committed outside of the U.S. It provides in full: "The district courts shall have

original jurisdiction of any civil action by an alien for a tort only, committed in violation of the

law of nations or a treaty of the United States." 28 U.S.C. § 1350.28 U.S.C. § 1350.

Plaintiffs are entitled to recover for their injuries under the federal Anti-Terrorism Act

("ATA"), through which Defendants are liable because they aided and abetted terrorist acts in

Iraqi Kurdistan and elsewhere and used Plaintiff as further layer to commit acts in violation of 18

U.S.C. § 2333(d)(2). Plaintiff accordingly seek justice under

the ATA's aiding-and-abetting provision, which Congress enacted "to provide civil litigants with

the broadest possible basis, consistent with the Constitution of the United States, to seek relief

against persons, entities, and foreign countries, wherever acting and wherever they may be

found, that have provided material support, directly or indirectly, to foreign organizations or

persons that engage in terrorist activities against the United States." Justice Against Sponsors of

Terrorism Act ("JASTA") § 2(b), Pub. L. No. 114-222, 130 Stat. 852, 853 (2016). See Owens v.

*BNP PARIBAS, SA, 897 F.3d 266, 277 (D.C. Cir. 2018)*. (On January 4, 2022, the United States

Court of Appeals for the D.C. Circuit decisively rejected every core legal argument advanced by

the defendants in *Atchley v. AstraZeneca UK Ltd., 22 F.4th 204 (D.C. Cir. 2022)*, broadly ruling

that corrupt payments to terrorists in Iraq, which includes Defendant Iraqi Kurdistan Regional

Government, including protection payments, supported liability under the ATA. The D. C.

Circuit Court further held the ATA "authorizes victims of terrorism to recover against anyone

shown to have played a primary (direct) or secondary (aiding-and-abetting) role." (*See Atchley v.*

*AstraZeneca UK Ltd., 22 F.4th 204, 208 (D.C. Cir. 2022)*. Defendants, through their

Washington  D.C. representatives and attorneys and other advisors, knew or should have known

about the D.C. Circuit's Atchley ruling, which received significant media coverage, and further

incentivized Defendants to continue concealing their corrupt payments and transferal of materiel

and transferal of sensitive and classified U.S. national defense information, gathered and owned

by the United States government, including information from agencies that comprise the United

States Intelligence Community and the United States Department of Defense, received by

Defendants in their official capacities with then Defendant Iraqi Kurdistan Regional

Government, to al-Qaeda, al-Qaeda-in-Iraq, and Islamic State. The corrupt payments and

transfers of materiel and intelligence information have

materially provided means to operate and perpetuate the criminal enterprise that has harmed

Plaintiffs.

    78. Defendants' legal background, knowledge in international relations, lobbying, and

sophisticated practices including RICO, False Claims Act, and U.S. Department of Treasury's

OFAC sanctions demonstrates Defendants' continual flagrant disregard for U.S. Anti-Terrorism

Act funding and the harm placed on Plaintiff by Defendants. There are reasonable grounds and

sufficient evidence are jointly and severally liable for the aforementioned acts which harmed

Plaintiff, and continue to harm Plaintiff, none of which

were permitted, sanctioned, or authorized by international law, international treaty or convention.

Defendants knowingly and willingly continued for all times relevant have accepted illicit funds

from co-conspirators and Co-Defendants, with full understanding the evidence of terrorist-

funding is prevalent, remains, and is in violation of U.S. law. Defendants' knowingly and

maliciously continued MICCE and callously sought Plaintiff's ruination for her direct knowledge

of crimes by MICCE and the use of her "heritage and culture" to promote MICCE activities.

As a result of Defendants' malicious acts, Plaintiff has suffered damages and will continue to

suffer from the emotional and psychological scars a lack of sense of safety, protection, and

security protecting the funding of these acts of terror for years to come. The injuries are directly

traceable to the actions of the defendants.

The character of the acts and omissions of Defendants Moore, Moore Law Offices, Defendant

Sanford, Defendant Halloran, et. al., and Defendant Obermayer, et al., executed by Leslie

Spoltore, as an individually and representative of Obermayer, et al., and Defendant Davis were

deliberate, willful, knowing, intentional, wanton, malicious

and oppressive, and should be punished by an award of punitive damages.

The private right of action in 28 U.S.C. § 1605A(c) also authorizes "punitive damages,"

which "serve to punish and deter the actions for which they are awarded." Valore v. Islamic

Republic of Iran, 700 F. Supp. 2d at 87. (D.C. 2010). Courts balance four factors to determine

the appropriate amounts of punitive damages: "(1) the character of the defendants' act; (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *See Cabrera v. Islamic Republic of Iran, Civil Action No. 19-3835 (JDB) (D.C. Jan. 27, 2023*), (*quoting Oveissi v. Islamic Republic of Iran, 879 F.Supp.2d at 56 (D.D.C.2012) and Acosta v.27, 2023), (quoting Oveissi v. Islamic Republic of Iran, 879 F.Supp.2d at 56 (D.D.C.2012) and Acosta v. The Islamic Republic of Iran, 574 F. Supp. 2d at 30 (D.C. 2008)*. In the instant case, all four factors weigh strongly in favor of awarding significant punitive damages.

Wherefore, Plaintiff Mahtaub Moore for the continued harm by Defendants for their oppression and abuse and acts, placing Plaintiff's family in Iran and her own security and safety at risk, through orchestrated and false criminal threats for fines or detainment and physical threats to harm Plaintiff in furtherance of Defendants' support of MICCE, merit judgment against Defendants in an amount sufficient to compensate them for injuries perpetrated and continuing injuries and threatened future injury, and it is absolutely clear the alleged wrongful behavior could reasonably be expected to recur, by Defendants and for significant losses and damages suffered from their plan, scheme, conspiracy,

and course of conduct, and the fruits of their multitudinous crimes, in which each of the Defendants participated directly or indirectly, and willfully, directly and indirectly, intentionally, knowingly, and repeatedly in violation of the law of nations and willfully, intentionally, knowingly, and repeatedly, directly and indirectly, ignored laws and international treaties and conventions governing malum in se offenses, which dictate civilized and lawful behavior of the United States of America; and by reason of the acts, transactions, and omissions alleged herein, and for treble damages as provided by law, sufficient to "yield the

desired deterrent effect," *(See Valore v. Islamic Republic of Iran, 700 F. Supp. 2d at 88 (D.C. 2010))* along with costs of suit, including attorney's fees.

79. Defendants conduct of terrorism funding using Plaintiff as a decoy for shell company Ingomar Fiduciary Services, Inc. and other associated gross criminal violations is "'part of a longstanding pattern and policy, making the need for deterrence clear.".' *See Abedini v. Government of Islamic Republic of Iran, 422 F. Supp. 3d 118, at 141 (D.C. 2019).* Wherefore, Plaintiffs demand judgment against Defendants, recognizing their massive illicit wealth, for compensatory damages, in an amount sufficient to compensate Plaintiff for injuries perpetrated by Defendants and for solace; and for punitive damages sufficient to punish Defendants, for the threats inflicted upon Plaintiff, and sufficient to yield the desired deterrent effect. *See Valore v. Islamic Republic of Iran, 700 F. Supp. 2d at 88 (D.C. 2010).*

## PRAYER OF RELIEF

Plaintiffs' allegations state a claim of violation of clearly established law. *See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).*

Plaintiffs request that the Court:

(a) Award Plaintiffs their attorney's fees and costs and expenses incurred in this action, pursuant to 28 U.S.C. § 1350);

(d) Enter judgment against Defendants in the amount of Ten Million Dollars ($10,000,000.00) finding them jointly and severally liable under the Anti-Terrorism Act, 18 U.S.C. § 2333;

(e) Award Plaintiffs compensatory, consequential, and punitive damages to the maximum extent permitted by law, and treble any compensatory damages

awarded under the Anti-Terrorism Act, pursuant to 18 U.S.C. § 2333;

(j) Award Plaintiffs prejudgment interest; and

(k) Award Plaintiffs any such further relief the Court deems just and proper.

## COUNT III
## INFLICTION OF EMOTIONAL DISTRESS

Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

Defendants Moore, Moore Law Offices, Obermayer through agent Leslie Spoltore, Spoltore,
individually, Moore, individually, Davis, Halloran, et al., Eccleston, et al., Sanford, and Barzani
attempted and did affect an unprovoked, intentional, unlawful injury falsifying true facts to
possibly detain and convict Plaintiff unjustly and unlawfully and under such circumstances as to
create a well-founded fear of imminent peril, coupled with the apparent present ability to
effectuate their evil attempts if not prevented.

Defendants in a successful attempt to threaten violence and harm on the Plaintiff
willfully arranged for threats on Plaintiff on March 8, 2024, documented by law enforcement, at
her home and did cause and occasion harmful, offensive, and violent emotional harm to Plaintiff.
As a direct result of Defendants' intentional actions of aggression as alleged in this complaint,
Plaintiff experienced injuries and harm, all of which were reasonably foreseeable, and some of
which may be permanent, the full extent of which are still not known, and due in whole or part to
the acts of Defendants including (a) emotional harm; and (c) inconvenience and interference with
usual and everyday activities. The injuries are directly traceable to the challenged action of the
defendants.

Venue is proper in this Court because the causes of action asserted herein arose in this
District and caused tortious injury by this act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court

enter an award in Plaintiff's favor and against Defendants, as follows:

(1) Awarding Ms. Moore damages of not less than

$500,000 or in such additional amount to be proven at trial;

(2) Awarding Ms. Moore punitive damages to the maximum extent

permitted by law, but not less than $2,000,000;

(3) Awarding Ms. Moore all of her expenses and costs, present and

unknown in the future, of not less than $100,000; and

(4) Granting such other and further relief as the Court deems appropriate.

## JURY DEMAND

In accordance with Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by

jury on all issues so triable.

Dated: July 15, 2024

By: _____

Mahtaub Moore
*Pro se*
1 Wood Road
Wilmington, DE 19806
M23strategies@gmail.com
703-946-3704